## McCASLAN v. NANCE.

1. CHARGE—ESTOPPEL.—The charge of the trial justice in this case on the question of estoppel was not a denial of substantial justice.
2. AGRICULTURAL ADVANCES—AGRICULTURAL LIEN.—The rent of a mule used in the cultivation of a crop may properly be included in the agricultural advances contemplated in the lien law, and be secured by a lien on such crop.
3. LIENOR—LIENEE—ATTACHMENT.—A sheriff, under a warrant issued on an agricultural lien, may seize a lot of cotton in possession of the landlord, turned over to him for rent, when the amount so in his possession is more than the rent due, and he may sell the interest of the lienor in the cotton, and the purchaser takes the possession of all, the landlord's rent not being affected, purchaser and landlord then becoming tenants in common of the cotton.
4. CLAIM AND DELIVERY by a landlord is not the proper proceeding against a sheriff who has taken, under a lien warrant, a lot of cotton from a landlord turned over to him for rent, when the cotton is more than enough to pay the rent due. *Dictum.*

Before ALDRICH, J., Abbeville, July, 1895. Reversed.

Action by J. W. McCaslan against F. W. R. Nance, for

possession of three bales of cotton, taken from plaintiff by defendant under lien warrant. The cotton had been turned over to plaintiff by his tenants for rent for land and mule. W. T. Bradley & Co., for whom sheriff acted, had agricultural lien on crop for advances to tenants. The following is the report of Trial Justice R. E. Cox:

This was an action for claim and delivery of three bales of cotton, tried before me on the      day of          1895. A jury was empanelled, and, after all testimony in and after my charge, rendered a verdict for the defendant. It seemed that Bedford Calhoun, sr., and Bedford Calhoun, jr., colored men, were, in 1894, tenants of the plaintiff, J. W. McCaslan. They were to pay as rent 1,800 pounds of lint cotton, and 600 pounds in addition as rent of a mule. They gave a rent note for 2,400 pounds of cotton, the mule rent being included in the note. This note the plaintiff, J. W. McCaslan, hypothecated with Wideman, Jay & Co., merchants, of Troy, S. C. The Calhouns made arrangements for advances with W. T. Bradley & Co., also merchants of Troy, S. C. Mr. W. T. Bradley testified that he refused to make advances to the plaintiff's tenants until he, McCaslan, put the rent at 1,800 pounds, and that he would not have advanced had it been more, as that was the usual and full rent for the land. All this McCaslan knew. The three bales of cotton were taken by W. T. Bradley & Co., under an agricultural warrant against the Calhouns—McCaslan, as they alleged, having received the 1,800 pounds for rent. The plaintiff then brought this action against the sheriff to recover the cotton. I was requested, orally, by plaintiff's attorney to charge the jury that, as W. T. Bradley knew the 600 pounds for mule rent was included in the rent note, that they, W. T. Bradley & Co., were estopped from claiming anything until the whole 2,400 pounds was paid. I charged the jury that the question of estoppel was one for the jury on the facts, but, so far as the law was concerned, I did not think estoppel applied here, because every man was presumed to know the law. That if the rent of a

mule could not be included in the landlord's statutory lien for rent, that McCaslan was presumed to know this as well as Bradley, and that Bradley was not required to proclaim anything on the subject. That the transaction was between the original parties, and, if there was no deceit nor deception, both parties knowing all the facts, and that Bradley did not induce McCaslan to take the note, then each was presumed to know the law.

That if the jury believe that McCaslan had taken the note and deposited the same with Wideman, Jay & Co., before Bradley & Co. agreed to make the advances, that I could not see how Bradley & Co. could be estopped. That there was a direct conflict of testimony between Bradley and McCaslan—one swearing that it was the understanding and agreement that Bradley & Co. were to receive nothing until McCaslan was paid the whole 2,400 pounds of cotton, the other swearing that there was no such understanding, and, therefore, that the jury must determine this for themselves. I charged the jury that the landlord's lien for rent was good, whether written or oral, and whether recorded or not; but that he must take a written lien for mule rent and index the same, even if mule rent was the subject of an agricultural lien. As to whether mule rent was the subject of a lien, I charged them that it was undecided in this State. That there was but one decision approaching the subject, and that was written by Wright, when he decided that the purchase price of a mule was not the subject of a lien, but told the jury that it was intimated in this case that the rent of a mule might be the subject of an agricultural lien. I told the jury the whole matter was for them on the facts of the case.

Judge Aldrich sustained the judgment below, and the plaintiff appeals on the following exceptions:

1. Because the presiding Judge erred in overruling the following grounds of appeal and exceptions from the judgment and rulings of the trial justice, viz: I. Because the trial

REP.] November Term. 1895.

justice erred in charging the jury that there could be no
estoppel, because every one was presumed to know the law.
II. Because the trial justice erred in refusing to charge the
jury, as requested by the plaintiff, "that if Bradley & Co.
knew that the plaintiff had taken a rent note for the rent
of the land, which included in it the rent of the mule, and
made no objection to it, then they were estopped from claim-
ing a superior lien to that of the plaintiff." III. Because
the evidence showed that Bradley & Co. refused to make
any advances to the Calhouns until the plaintiff agreed to
furnish them a mule, and that Bradley & Co. knew that
the rent of the mule was included in the rent note for the
land, and it was error in the trial justice not to allow the
jury to pass upon the question of estoppel. IV. Because
the evidence showed that the plaintiff was in the rightful
possession of the property, and it was error in the jury to
find a verdict in favor of the defendant, and the trial jus-
tice erred in refusing to set aside the verdict, and grant a
new trial on motion of the plaintiff. V. Because the trial
justice erred in refusing to charge the jury whether or not
the rent of a mule could be considered an advance, and in
telling them that the only decision ever made on the sub-
ject was by a negro and a Republican, thus endeavoring to
influence the jury to find contrary to the opinion of the Su-
preme Court of the State. VI. Because the evidence largely
preponderated in favor of the plaintiff, and the verdict was
against the manifest weight of the evidence, and the trial
justice erred in refusing to set said verdict aside and grant
the plaintiff a new trial on his motion made for that purpose.
VII. Because the undisputed testimony showed that the
plaintiff had an absolute title to at least part of said cotton
in dispute, and the jury had no right to find a verdict in
favor of the defendant, and it was error in the trial justice
to refuse to set said verdict aside on the motion for a new
trial made before him.

2. Because the presiding Judge, by his action in affirm-
ing the judgment of the trial justice without prejudice to

the plaintiff to bring such action as he might be advised to recover the balance due him as rent, admitted that a certain amount of said cotton belonged to the plaintiff, and it is respectfully submitted that the Judge erred in not holding that the plaintiff was entitled to retain possession of said cotton until his rent was paid, and if it was taken away from him, that he had the right to recover the same.

*Messrs. Graydon & Graydon*, for appellants.

*Messrs. Parker & McGowan*, contra.

May 19, 1896. The opinion of the Court was delivered by

Mr. Justice Gary. This action was commenced in a trial justice court for claim and delivery of three bales of cotton. The trial justice's statement of the case and the appellant's exceptions will be set out in the report of the case.

The first error of which the exceptions complain is, that the Circuit Judge should not have overruled the plaintiff's exceptions to the charge of the trial justice in regard to the question of estoppel. The trial justice, it is true, made use of the expression that, so far as the law was concerned, he did not think the doctrine of estoppel applied in the case. He, however, proceeded to charge the jury upon the question of estoppel, and even if there was technical error on the part of the trial justice in his charge to the jury, the Circuit Judge, under section 368 of the Code, was required to "give judgment according to the justice of the case, without regard to technical errors and defects, which do not affect the merits." The charge of the trial justice had to be considered as a whole, and when so considered, it will be seen that he practically charged the jury as follows, on the question of estoppel:

1st. That mere *knowledge* on the part of W. T. Bradley & Co. that the amount due for the hire of the mule was included in the rent note, did not estop them until the whole 2,400 pounds of cotton was paid.

2d. That if there was no deception, and both parties

knew all the facts, W. T. Bradley & Co. were not estopped, provided they did not *induce* McCaslan to take the note.

3d. That the testimony was conflicting as to the alleged agreement between McCaslan and W. T. Bradley & Co., relative to the hire of the mule, and that it was for the jury to determine this conflict of testimony. This Court fails to see wherein this charge was a denial of substantial justice.

The next question raised by the exceptions is, whether the hire of the mule could properly be regarded as an advance for agricultural purposes? Although this Court might interpose the objection that this question does not properly arise in this case, inasmuch as there was no such agreement as constituted a lien, still the Court will take advantage of this opportunity to decide what seems to be an open question in this State. The amount due for the hire of a mule to work an agricultural crop is included within the terms of the statute providing for advances for agricultural purposes, as the labor of the mule must be regarded as expended in making the crop.

The last question raised by the exceptions is, whether the sheriff had the right to take from the possession of the plaintiff so much of the cotton as had been delivered to him in payment of the amount due for rent of the land. McCaslan had a prior lien on the crop for rent of the land, and became the owner of so much of the cotton delivered to him as was necessary to satisfy the amount due him for rent of the land. The cotton delivered to him was more than sufficient to extinguish his lien for rent of the land, and he thereby became a tenant in common in the ownership of said cotton. W. T. Bradley & Co. had the right to have their lien satisfied out of so much of said cotton as remained after satisfaction of McCaslan's lien for rent. For the purpose of enforcing payment of this claim, the sheriff had the right to seize all the property in which the tenants had a joint interest, then to sell the interest of the tenants, and to deliver possession of all the property to the purchaser, who would thereby be-

come a tenant in common with McCaslan. Freeman on Cot. and Par., sec. 214; Hillard on Torts, ch. XXXIII , sec. 6; Freeman on Executions, secs. 125, 254a; *Waddell* v. *Cook*, 2 Hill (N. Y.), 48; see, also, notes to this case, reported in 37 Am. Dec., 372; *Schatzill* v. *Bolton*, 2 McC., 478.

The seizure of the property by the sheriff did not affect McCaslan's right to a division of said property, nor would a sale of the property by the sheriff confer upon the purchaser any right which *McCaslan* has in the cotton. Although, technically speaking, the act of the sheriff in taking possession of all the property, and refusing to deliver to the plaintiff any part thereof, was not *tortous*, and, therefore, the action of *claim* and *delivery* is not plaintiff's proper remedy; still, as this objection was not urged in the Court below, this Court does not feel called upon to interpose such objection. The plaintiff undoubtedly had an interest in the cotton seized by the sheriff to the extent of 157 pounds of lint cotton (the trial justice having reported that the amount *due* for rent was 1,800 pounds of lint cotton, and no effort was made to correct the report in this particular). · And as substantial justice can be done in this action, there is no necessity that the plaintiff should be compelled to commence another action for a division of said cotton. The plaintiff failed to get substantial justice as to the 157 pounds of lint cotton.

It is, therefore, the judgment of this Court, that the judgment of the Circuit Court be reversed, and a new trial ordered, *unless* within ten days after written notice of this judgment the defendant shall deliver to the plaintiff 157 pounds of said cotton, or its equivalent in money. And upon such being done, that the judgment of the trial justice be affirmed.